IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JON ALTON CURTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:20-cv-478-JTA |
| | ) |
| KILOLO KIJAKAZI, | ) (WO) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Jon Alton Curtis ("Curtis"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Curtis' claim for Supplemental Security Income ("SSI"). (R. 193.)[2] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 9, 10.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 18.)

I.   PROCEDURAL HISTORY AND FACTS

Curtis was born on April 13, 1963 (R. 430) and was 56 years old at the time of the administrative hearing held on June 21, 2019 (R. 199-228).  Curtis completed the eighth grade.  (R. 207-08.)  He previously worked as a forklift operator and long distance truck driver.  (R. 209, 217.)  On May 12, 2017, Curtis protectively filed an application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act (42 U.S.C. §§ 1381, *et seq*.). (R. 386-91.)  Curtis alleged a disability date of February 7, 2017, due to back and neck pain, diabetes, and neuropathy.  (R. 204, 386.)

The Social Security Administration denied Curtis' application initially on August 18, 2017 (R. 288-89) and he  requested a hearing before an Administrative Law Judge ("ALJ") (R. 294-95).  Prior to the hearing, Curtis amended his original alleged onset date to April 13, 2018.  (R. 204, 386, 414.)  The hearing was conducted on June 21, 2019.  (R. 199-228).  On September 4, 2019, the ALJ issued a decision that Curtis was not eligible for SSI because he had not been disabled.  (R. 185-93.)

Curtis sought review of the Commissioner's decision by the Appeals Council.  (R. 177-78.)  The Appeals Council denied review of the ALJ's decision on May 15, 2020.[3]  (R. 1-5.)  On July 10, 2020, Curtis filed the instant action seeking review of the Commissioner's final decision.  (Doc. No. 1.)  This matter is ripe for review.

---

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III.    STANDARD FOR DETERMINING CONTINUING DISABILITY

An individual who files an application for Social Security SSI must prove that he is disabled. *See* 20 C.F.R. § 416.920. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

3

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(3)(A); 20 C.F.R. § 416.905(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a). The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec*., 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 416.972(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 416.971. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, and 426.926. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 416.920(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 416.920(f). The ALJ

must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 416.920(g). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 916.920(g). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(b), 416.960(c).

## IV.  ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Curtis had not engaged in substantial gainful activity since the application date of February 7, 2017. (R. 187.) The ALJ determined that Curtis suffers from the following severe impairments that significantly limit his ability to perform basic work activities: degenerative disc disease of the lumbar and cervical spine, chronic obstructive pulmonary disease ("COPD"), and diabetes mellitus. (R. 187.) The ALJ noted that Curtis alleged having peripheral neuropathy, but found that the alleged impairment was non-medically determinable. (R. 188.)

The ALJ concluded that Curtis' impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 188.) The ALJ summarized her evaluation of Curtis' severe impairments as follows:

> [Curtis'] degenerative disc disease has been considered under listing 1.04, Disorders of the Spine. There is no evidence in the medical record of any compromise of the nerve root, including cauda equina, spinal arachnoiditis, spinal stenosis as required by the listing. Treatment records did not show that [Curtis] is unable to ambulate effectively, as required by listing 1.04 (B6F/164; B4F). Moreover, no acceptable medical source designated to make equivalency findings has concluded that [Curtis'] impairment medically equal a listed impairment.
>
> Listing 3.02 is not met because under 3.02(A), [sic] requires the claimant's FEV-1 to be less than or equal to 1.25; or have an FVC less than or equal to 1.50; or chronic impairment of gas exchange demonstrated by average of two unadjusted, single-breath DLCO measurements less than or equal to 9. However, the record contains no evidence of pulmonary function testing.
>
> Although diabetes is no longer a listed impairment, the undersigned considered applicable listings under other body systems. However, [Curtis'] diabetes does not meet or equal any of the listed impairments as assessed under Social Security Rulings 14-2p or 14-3p. The undersigned makes this determination based on signs, symptoms, and laboratory findings regarding [Curtis'] diabetes singly and in combination with his other impairments.

(R. 188.)

After consideration of the complete record, including Curtis' symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence, the ALJ determined that Curtis retains the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c),[4]

> except he can frequently operate foot controls bilaterally. He can frequently reach overhead bilaterally. [He] can climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can never

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

6

> work at unprotected heights, but he can occasionally work around moving mechanical parts. [He] can occasionally work in weather, humidity, wetness, and vibration. He can occasionally work in atmospheric conditions, such as dust, odors, fumes, and pulmonary irritants.

(R. 188.) In assigning this RFC, the ALJ found Curtis' statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence which only documents mild objective findings. The ALJ compared imaging of Curtis' lumbar spine from 2015 and 2019 to find mild degenerative change with "normal range of motion and normal sensations, reflexes, and motor strength, without any evidence of positive straight-leg raising." (R. 189.) She also noted mild degenerative change in the cervical spine when comparing imaging from 2017 and 2019, with a full range of motion and no tenderness in his neck. (R. 189.) The record showed that Curtis' degenerative disc disease has been treated solely with medication with no recommendation that he undergo any surgical intervention for this condition. (R. 189.) The ALJ's review of evidence for COPD showed clear lungs from a 2017 imaging with "normal respiratory findings on exam, including regular and unlabored respiratory effort." (R. 190.) In addition, the record showed no known diabetic complications. (R. 190.)

The ALJ found Curtis was unable to perform his past relevant work as an industrial truck operator. (R. 191.) Based upon the testimony of a vocational expert ("VE"), the ALJ assessed whether Curtis could perform unskilled medium work despite the limitations imposed by his RFC. (R. 192.) In light of the VE's testimony that a hypothetical person with Curtis' past work, education and age could work as a bagger or dining room attendant, the ALJ determined that Curtis could perform these occupations. (R. 192, 221-22.) The

ALJ concluded that Curtis had not been under a disability, as defined in the section 1614(a)(3)(A) of the Social Security Act. (*Id*.)

## V. DISCUSSION

Curtis presents three arguments on appeal. First, he argues the ALJ improperly discredited a consulting source opinion. (Doc. No. 16 at 6-12.) Second, he argues the ALJ lacked substantial evidence for the RFC determination. (*Id*. at 12-14.) Third, he argues the ALJ improperly considered his diabetic peripheral neuropathy. (*Id*. at 14-15.)

The Court evaluates each of Curtis' arguments below.

A. The ALJ properly evaluated the consulting opinion of Dr. Alan Babb.

Curtis challenges the ALJ's assessment of the consulting opinion from Dr. Alan Babb ("Dr. Babb"), who opined that Curtis was limited to light work.[5] Curtis presents interrelated arguments that the ALJ addressed evidence related to his back but dismissed how his COPD and insulin dependent diabetes impact his capacity for work and need for environmental limitations. (Doc. No. 16 at 6-12.) The Commissioner responds that the opinion of a non-treating physician is not entitled to deference or any special consideration and that the ALJ supported her findings by showing good cause to discount portions of Dr. Babb's opinion. (Doc. No. 17 at 4.)

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

The ALJ is required to "state with particularity the weight [s]he gave different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986); *see also Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948, 955 (11th Cir. 2019); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).[6] Additionally, the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020). While an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," she is required to state "with particularity the weight she gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006). Although the opinion of an examining physician is generally entitled to greater weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Huntley v. Soc. Sec. Admin., Comm.*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

---

[6] The regulations governing claims filed on or after March 27, 2017, abandon the requirement that the ALJ must give "good reasons" for the weight given medical opinions and prior administrative medical findings. *See Nix v. Saul*, Case No. 4:20-cv-00790-RDP, 2021 WL 3089309, at * 6 (N.D. Ala. July 22, 2021). However, Curtis protectively filed his application on May 12, 2017, alleging a disability onset date of February 7, 2017 so the regulations in existence in February 2017 apply to his claims. *See Walker v. Astrue*, No. 1:12-CV-2586-TWT, 2013 WL 5354213, at *2 (N.D. Ga. Sept. 24, 2013) ("Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. . . . A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.") (internal citation and marks omitted); (*see also* Doc. No. 16 at 1, n.1) ("This matter arises from [Curtis'] application for [SSI] filed on February 7, 2017.").

Here, substantial evidence supports the weight and reasoning that the ALJ gave to the medical opinion of Dr. Babb. Markedly, Dr. Babb is a consultative examiner, thus his opinion is not controlling and is not entitled to deference. *See McSwain,* 814 F.2d at 619. Dr. Babb's RFC assessment placed Curtis at a light work level. (R. 529-30, 533.) However, Dr. Babb observed during examination that Curtis was not in any distress during the exam and did not appear to need his cane. (R. 522.) Dr. Babb wrote that Curtis' "effort and motivation appear to be very limited," that he took insulin, and that his diabetes was "under unknown control." (R. 525.) The ALJ noted that Dr. Babb found no joint or back impairment and no known diabetic complications. (R. 190, 524.) The ALJ also noted that

> Dr. Babb opined that [Curtis] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He opined that [Curtis] can occasionally work around unprotected heights, dust, odors, fumes, and pulmonary irritants. Lastly, he opined that [Curtis] can frequently work in extreme cold, extreme heat, and vibrations.

(R. 190.) The ALJ gave great weight to Dr. Babb's opinion that Curtis did not need a cane and found that the environmental limitations were supported due to Curtis' COPD.[7] However, the ALJ explained that she gave little weight to the remaining limitations because the evidence did not support a light exertional level. (R. 190.) The ALJ further explained that she afforded partial weight to Dr. Babb's opinion as a whole. (R. 191.)

Curtis objects that the ALJ's RFC would require him to stand and/or walk for more than four hours each day. The ALJ cited Dr. Babb's findings that Curtis has "normal range

---

[7] The ALJ's RFC imposed more limited restrictions on Curtis' ability to work due to COPD than those recommended by Dr. Babb, including no work at unprotected heights; occasional work around moving mechanical parts; and occasional work in weather, humidity, wetness, and vibration. (R. 188.)

of motion and normal sensations, reflexes, and motor strength, without any evidence of positive straight-leg raising" both as support for the RFC determination and as reasons for rejecting the stand/walk limitations imposed by Dr. Babb. (R. 189, 190-91, 524.) Thus, the ALJ's decision that Curtis is capable of greater exertion is consistent with the record. Curtis cites his 2015 handicapped parking authorization, which indicates that he is unable to walk two hundred feet without rest, as support for Dr. Babb's stand/walk limitation. (Doc. No. 16 at 8; Doc. No. 16-1 at 3.) However, the record does not show that the authorizing physician approved special parking due to a particular condition nor why Curtis made the request.[8] (Doc. No. 16-1 at 3; R. 477.)

Curtis also claims that his COPD and diabetes affect his ability to walk such that he should be limited to light work. (Doc. No. 16 at 8-12.) He asserts that because Dr. Babb's opinion is the only medical opinion in the record, there is no evidence in the file that supports his ability to stand for more than four hours a day. (Doc. No. 16 at 8; Doc. No. 21 at 2.) Curtis' reliance on Dr. Babb's RFC opinion is misplaced because the ALJ explained how, with the exception of the environmental limitations based upon COPD, the opinion was inconsistent with the companion medical report. An ALJ is not bound by an unsupported medical opinion where it is inconsistent with the record. *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832-33 (11th Cir. 2013) (citing an ALJ's obligation to

---

[8] In discussing the ALJ's treatment of medical findings prior to his amended onset date of April 13, 2018, Curtis argues that pre-onset records are irrelevant. (Doc. No. 16 at 12.) Although this argument is partially correct, adoption of it would not benefit Curtis as it would lead to the conclusion that his 2015 pre-onset handicapped parking authorization is irrelevant. *See Santos*, 731 F. App'x at 856 (adopting an ALJ's statement that pre-onset medical records were of *limited* relevance in disability determinations) (emphasis added).

assign greater weight to medical opinions that are consistent with the record under 20 C.F.R. § 404.1527(c)(4)).  Therefore, the ALJ properly rejected the unsupported conclusions contained in Dr. Babb's RFC opinion.

Similarly, Curtis' claim that no evidence supports the ALJ's finding that he can stand/walk for more than four hours a day because of COPD and diabetes seeks to shift the burden in the Commissioner's regulatory scheme.  (Doc. No. 16 at 8.)  Pursuant to the governing regulations at 20 C.F.R. § 416.920, an individual who files an application for Social Security SSI must prove that he is disabled.  *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 857 (11th Cir. 2013).  Here, Curtis relies solely on the RFC assessment from Dr. Babb – which was properly discounted by the ALJ – and points to no contrary evidence.  Dr. Babb cited lower back pain as cause to limit Curtis' ability to lift and cited COPD in support of the environmental limitations.  (R. 529, 533.)  Curtis asks the Court to find that his stand/walk tolerance is limited by lower back pain when Dr. Babb found no back impairment on examination.  (R. 524.)  Even though the record documents Curtis' use of an inhaler for COPD, there is no evidence of additional physical impairment, as Dr. Babb noted the absence of any chest pain, productive cough, or shortness in breath.  (R. 523.)  Regarding limitations attributable to diabetes, Curtis overlooks Dr. Babb's statement that he was unaware of any diabetic complications.  (R. 190, 524.)

Curtis' final contention relating to Dr. Babb's opinion is that his COPD and diabetes support Dr. Babb's determination that a reduced range of light work is appropriate based upon severe COPD and diabetes.  (Doc. No. 16 at 9-12.)  As cause for error based on COPD, Curtis cites the ALJ asking whether he was wheezing during the administrative

hearing and his statement during a state agency interview that walking to the mail box causes labored breathing. (*Id*. at 10; R. 208-09, 446.) As cause for error based on diabetes, Curtis cites his need for insulin and dangerously high AIC and blood sugar levels in 2019. (Doc. No. 16 at 10-11; R. 539-40, 562.) Curtis argues that both conditions "could legitimately limit" his ability to stand/walk beyond four hours a day, or to perform medium-level work and that the ALJ improperly considered Dr. Babb's RFC opinion. (Doc. No. 16 at 10, 11.)

The Court is unpersuaded by Curtis' arguments. "[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on his ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quotations and citation omitted). *See also Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work."). Curtis again ignores the ALJ's explanation that she discredited Dr. Babb's RFC opinion due to its lack of medical support from Dr. Babb's examination. (R. 190, 522-25.) The medical record supports this explanation. Consequently, substantial evidence supports the weight and reasoning that the ALJ gave to the medical opinion of Dr. Babb and the Court finds no reversible error.

B.  The ALJ's RFC finding is supported by substantial evidence.

A claimant's RFC is an administrative finding as to the most the claimant can do despite his limitations and is based on all the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 416.945. In general, the claimant is

responsible for providing evidence the ALJ uses to make an RFC finding. *See* 20 C.F.R. §§ 416.945, 416.912. The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram,* 496 F.3d at 1269. If the ALJ's determination of the claimant's RFC is supported by substantial evidence, then the court cannot overturn the conclusion reached by the ALJ. *Shue v. Comm'r of Soc. Sec.*, 817 F. App'x 906, 908 (11th Cir. 2020) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *see also Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 838 (11th Cir. 2020).

Curtis contests the ALJ's RFC determination through three interrelated allegations of error which contend that the ALJ's failure to order imaging and/or testing resulted in an RFC that is not based on substantial evidence. He asserts that the ALJ's comment regarding a lack of post-onset imaging of his chest should have prompted her to inquire why such was the case, and that, given the testimonial and record evidence of his indigency, should have prompted her to order all imaging/testing necessary to make an informed decision regarding his disability in accordance with 20 C.F.R. § 416.912(b). (Doc. No. 16 at 12-14; R. 190.) Curtis ends his argument by asserting that the ALJ's failure at each step of this process resulted in an impermissible negative inference that he is noncompliant due to poverty, in violation of *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). (Doc. No.

14

16 at 12-13.) The Commissioner responds that the ALJ had no reason to consider whether Curtis' indigency was the reason for a lack of records where the evidence before the ALJ showed that Curtis received medical treatment, including x-rays, when needed. (Doc. No. 17 at 9.)

At the outset, the Court cannot discern from Curtis' brief which of his conditions required imaging and/or testing. Though his argument begins with the ALJ's observation that a pre-onset x-ray from 2017 showed a clear chest, he does not demonstrate why the ALJ should have been alerted to a need for additional imaging. The lack of records or treatment history cited by Dr. Babb relate to Curtis' back pain and diabetes. (R. 524-25.) The Court notes that Dr. Babb had x-rays of Curtis' cervical and lumbar spine taken for his disability evaluation in February 2019, which showed mild degenerative change. (R. 526-27.) The record also shows that Curtis' hand was x-rayed in February 2019 and that he received treatment for cellulitis. (R. 550-561.) As the Commissioner argues, Curtis was able to obtain treatment for the conditions he felt medical care was necessary. Dr. Babb noted that Curtis did not seem to be in any distress from back pain which is consistent with the mild degenerative change indicated in his x-rays. (R. 522, 526-27.) Dr. Babb wrote that Curtis' diabetes carried no known complications, was under control, and that he did not check his blood sugar levels. (R. 524-25.)

Finally, the Commissioner concedes that an ALJ errs when she draws a negative inference from a lack of treatment without considering financial impediments to medical care, but argues that the ALJ did not do so here. (Doc. No. 17 at 10 (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). The Commissioner is correct. Here, the

15

ALJ based her decision on the evidence from the only medical opinion in the record. Curtis raises questions about the ALJ's evaluation of his severe COPD and diabetes, but neither refutes the reliability of Dr. Babb's opinion nor identifies record evidence that shows the ALJ erred in relying on Dr. Babb's examination report. Even if the ALJ could have reached a different conclusion, it is not the court's place to identify and enforce that alternate conclusion. *See Bloodsworth*, 703 F.2d at 1239. Here, the evidence is such that a reasonable person could reach the same conclusion as the ALJ. Therefore, the RFC determination is supported by substantial evidence in the record.

    C.    The ALJ did not err in her peripheral neuropathy finding.

Curtis complains that the ALJ erred in her consideration of his diabetic peripheral neuropathy when she found that it was non-medically determinable. (Doc. No. 16 at 14.) Curtis points to his prescribed medications "for what sounds like diabetic neuropathy" and that one physician "believe[d] that this is [Curtis'] primary problem." (*Id*. at 14-15; R. 482.) He asserts that the ALJ improperly substituted her hunch for the diagnosis of a medical professional. The Commissioner responds that the ALJ correctly found that the record does not support diabetic neuropathy. (Doc. No. 17 at 13.)

The ALJ addressed Curtis' claim of peripheral neuropathy from diabetes, but cited a lack of "medical evidence consisting of signs, symptoms, or laboratory findings (20 C.F.R. 416.908 and 416.929)." (R. 188.) The ALJ further stated

> Signs are anatomical, physiological, or psychological abnormalities that can be observed apart from an individual's statements regarding symptoms, and they must by [sic] shown by medically acceptable clinical and diagnostic techniques (20 C.F.R. 416.908). In the present case, the record contains no

16

>objective evidence that [Curtis] has peripheral neuropathy.  Therefore, this alleged impairment is non-medically determinable.

(R. 188.)

At the outset, the Court acknowledges that the ALJ erred in citing the wrong section of the regulations in addressing medical evidence for a medically determinable impairment. Curtis contends that the ALJ improperly cited 20 C.F.R. § 416.908 (2016), a regulatory provision that is reserved for future use, as authority for her consideration of his neuropathy complaint.  The Commissioner helpfully explained that the regulatory guidelines for establishing medically determinable impairments were formerly at that section and are now found at 20 C.F.R. § 416.921 (2017).  (Doc. No. 17 at 15, n.10.)  The Commissioner notes that the ALJ also cited 20 C.F.R. § 416.929, which also instructs that a medically determinable impairment must be established by evidence of signs, symptoms, or laboratory findings.  (*Id.*)  Despite her reference to the wrong section of the regulations, the ALJ set forth the regulatory standard for a finding of a medically determinable impairment.[9]  Thus, the Court finds this error by the ALJ to be harmless because it did not affect the ALJ's ultimate determination.  *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.") (citation omitted).

---

[9] *See* 20 C.F.R. § 416.921 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

Curtis' remaining argument is unavailing. In lieu of the required objective medical evidence, Curtis submits that two physicians have prescribed medication for diabetic neuropathy. (Doc. No. 16 at 15.) Yet, the record does not contain independent assessments by these physicians, and it appears the prescriptions were issued in response to Curtis' complaints of pain. As the ALJ stated, medically determinable impairments must be supported by signs, symptoms, or laboratory findings. (R. 188.) Substantial evidence supports the ALJ's finding because the record does not show any documentation of peripheral neuropathy due to diabetes beyond Curtis' complaints. *See Bryant v. Saul*, 2:19-560-N, 2021 WL 1183808, at *7 (S.D. Ala. Mar. 29, 2021) (rejecting self-reported symptoms and conclusory diagnoses as medical evidence of medically determinable impairment). Since substantial evidence supports the ALJ's decision to find that Curtis did not have a "medical determinable impairment" of peripheral neuropathy, the Court finds no reversible error.

## VI. CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds that the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law. Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 30th day of August, 2022.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE